UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| MICHAEL NEAL, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 3:11-CR-69-TWP-CCS-1 |
| | ) | | 3:16-CV-280-TWP |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 190, 193].[1] He bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. On July 25, 2016, the United States filed a request that this Court stay resolution of Petitioner's claim pending the Supreme Court's decision in *Beckles v. United States*, No. 15-8544, 2016 WL 1029080 (June 27, 2016) [Doc. 198 (suggesting Petitioner's entitlement to relief depends on whether or not the *Johnson* decision's application in the Guideline context has been made "retroactively applicable" on collateral review)]; Petitioner responded in opposition to a stay of proceedings on July 26, 2016 [Doc. 202]. For the reasons that follow, the United States's request for a stay [Doc. 198] will be

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed an initial motion on June 2, 2016 [Doc. 190], and amended petition on June 8, 2016 [Doc. 193]. Because the motions share a singular ground for relief, this Court will treat both filings as a single petition.

**DENIED** and Petitioner's § 2255 motion [Docs. 190, 193] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.   BACKGROUND

In 2012, Petitioner pled guilty to, and was subsequently convicted of, conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A); and possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) [Docs. 108, 116]. Based on two prior convictions—one Illinois conviction for aggravated discharge of a firearm and another conviction for possession of cocaine with intent to distribute, the United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines [Presentence Investigation Report (PSR) ¶¶ 40, 48, 50]. As a result of the enhancement, Petitioner received an effective Guideline range of 322 to 387 months—consisting of a range of 262 to 327 months for the drug offense followed by a mandatory consecutive 60-month sentence for the § 924(c) offense [*Id.* ¶ 83]. On June 14, 2013, this Court sentenced Petitioner to an aggregate term of 322 months' incarceration [Doc. 160]. No direct appeal was taken and Petitioner's conviction became final for purposes of § 2255(f)(1) on June 28, 2013, at expiration of time to file an appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed).

Slightly less than three years later—on June 2, 2016—Petitioner filed the instant petition challenging his sentence in light of the *Johnson* decision [Docs. 190, 193].

II.   REQUEST FOR STAY

In addition to Petitioner's request for collateral relief, this Court is in possession of the United States's motion to stay proceedings pending the Supreme Court's decision next term in

*Beckles* [Doc. 198]. As support, the United States notes that the decision is expected to address a key issue—retroactive application of the *Johnson* decision in the Guideline context [*Id.*].

"The question whether to stay a case pending a potentially dispositive decision in an appellate court is a pre-trial matter committed to the sound discretion of the [court]." *United States v. Johnson*, No. 3:11-CR-48, 2016 WL 4035187, at *1 (S.D. Ohio July 28, 2016). Because Petitioner has failed to demonstrate that retroactive application of the *Johnson* decision to the instant case would render his sentence unlawful, the Court finds the requested stay unnecessary.

### III. TIMELINESS OF PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). It is yet

to be seen whether the same is true of the "new rule" that results from application of *Johnson*'s reasoning in the Guideline context. *See Pawlak v. United States*, 822 F.3d 902, 911 (6th Cir. 2016) (holding that *Johnson*'s vagueness analysis applies equally to the Guidelines and, as a result, that the parallel residual provision contained in Section 4B1.2 was void for vagueness); *but see In re Embry*, No. 16-5447, 2016 WL 4056056, at *1 (6th Cir. July 29, 2016) (recognizing that "it is not clear whether to treat *Pawlak* as a new rule that the Supreme Court has not yet made retroactive [to cases on collateral review] or as a rule dictated by *Johnson* that the Supreme Court has made retroactive"). The Court finds that it need not resolve the issue here, however, because the *Johnson* decision has no impact on Petitioner's case.

**IV. STANDARD OF REVIEW**

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

**V. ANALYSIS**

Petitioner articulates as single ground for collateral relief: arguing that his prior Illinois conviction for aggravated discharge of a firearm no longer qualifies as a crime of violence after the *Johnson* decision and that, without that conviction, he is not a career offender [Docs. 190, 193].

4

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of prior drug offenses as predicates. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Section 4B1.1 classifies a defendant as a career offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

5

(3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Manual § 4B1.1(a). Only Petitioner's satisfaction of the third prong—possession of two qualifying predicate convictions—is disputed [Doc. 21].

"Controlled substance offense" is defined as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Manual § 4B1.2(b). "Crime of violence" is defined in an almost identical manner as "violent felony" under the ACCA. See U.S. Sentencing Manual §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

Petitioner does not contest that his prior conviction for possession of cocaine with intent to distribute remains a predicate controlled substance offense under Section 4B1.1(a)(3). As such, the validity of his sentence depends on whether his prior Illinois conviction for aggravated discharge of a firearm qualifies as a "crime[] of violence" under one of the unaffected provisions of Section 4B1.2(a). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether a particular offense qualifies as a crime of violence under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative

versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

For purposes of Section 4B1.2(a)(1), "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). The clause further requires that such force be used "against the person of another." 18 U.S.C. § 924(e)(B)(2)(i). The Court must look to the "minimum conduct criminalized" to determine whether 720 Illinois Compiled Statute Annotated § 5/24-1.2 categorically satisfies these requirements. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

At the time that Petitioner committed the offense, Illinois defined aggravated discharge of a firearm as follows:

> (a) A person commits aggravated discharge of a firearm when he or she knowingly or intentionally:
>
> (1) Discharges a firearm at or into a building he knows to be occupied and the firearm is discharged from a place or position outside that building;
>
> (2) Discharges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied;
>
> (3) Discharges a firearm in the direction of a person he knows to be a peace officer, a community policing volunteer, a correctional institution employee, or a fireman while [that person] is engaged in the execution of any of his official duties, or to prevent [that person] from performing his official duties, or in retaliation for [that person] performing of his official duties;
>
> (4) Discharges a firearm in the direction of a vehicle he knows to be occupied by a peace officer, a person summoned or directed by a peace officer, a correctional institution employee or a fireman while [that person] is engaged in the execution of any of his official duties, or to prevent [that person] from performing his official duties, or in retaliation for [that person] performing his official duties;

7

> (5) Discharges a firearm in the direction of a person he knows to be an emergency medical technician-ambulance, emergency medical technician-intermediate, emergency medical technician-paramedic, ambulance driver, or other medical assistance or first aid personnel, employed by a municipality or other government unit while [that person] is engaged in the execution of any of his official duties, or to prevent [that person] from performing his official duties, or in retaliation for [that person] performing of his official duties;
>
> (6) Discharges a firearm in the direction of a vehicle he knows to be an emergency medical technician-ambulance, emergency medical technician-intermediate, emergency medical technician-paramedic, ambulance driver, or other medical assistance or first aid personnel, employed by a municipality or other government unit while [that person] is engaged in the execution of any of his official duties, or to prevent [that person] from performing his official duties, or in retaliation for [that person] performing his official duties;

720 Ill. Comp. Stat. Ann. § 5/24-1.2(a) (1998). The provision went on to designate violations of subsections (a)(1) and (a)(2) Class 1 felonies and violations of (a)(3), (a)(4), (a)(5), and (a)(6) Class X felonies. 720 Ill. Comp. Stat. Ann. 5/24-1.2(b) (1998). The Illinois Court of Appeals has said that the crime is composed of two elements: (1) knowing and intentional discharge of a firearm; (2) in the direction of another person. *People v. Leach*, 952 N.E.2d 647, 654 (Ill. App. 2011); *see also People v. Vich*, 705 N.E.2d 115, 118 (Ill. App. 1998) (noting that offender must know that he is firing the weapon in the direction of another person). While it is "essential" that the defendant be aware "of the presence of an individual in the direction . . . he [or she] fires a weapon," *People v. Daheya*, 1 N.E.3d 920, 932 (Ill App. 2013), it is not required that the bullets strike the building or vehicle, *People v. Ellis*, 929 N.E. 2d 1245, 1249 (Ill App. 2010), or the offender intend to inflict death or injury to the victim, *People v. Fornear*, 669 N.E.2d 939, 944 (Ill. App. 1996), *reversed on other grounds by People v. Fornear*, 680 N.E.2d 1383 (Ill. 1997).

The Court notes that 720 Illinois Compiled Statute Annotated § 5/24-1.2 (1998) lists six separate criminal offenses, some of which qualify as Class 1 felonies and some of which qualify as Class X felonies. As such, the provision is divisible and subject to examination under the

8

modified categorical approach. *See Mathis*, 135 S. Ct. at 2256 (explaining that where "statutory alternatives carry different punishments, . . . they must be elements" (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000))). Despite compatibility with the modified categorical approach, the Court remains unable to apply that approach due to the fact that neither party submitted the necessary state court documents. While the absence of *Shepard* documents might prove dispositive under different circumstances, such is not the case here because all six methods of committing Illinois aggravated discharge of a firearm in 1998 involved the use, attempted use, or threatened use of violent physical force against the person of another.

As an initial matter, the fact that all six variants 720 Illinois Compiled Statute Annotated § 5/24-1.2 (1998) required discharge of a firearm means that the offense invariably involved the use of force capable of causing physical pain or injury. To the extent that Petitioner might argue some methods of committing the offense involved the use of that force "against property" as opposed to "the person of another" and thus cannot qualify as a predicate crime of violence under the use-of-physical-force clause, this Court disagrees and is unaware of any Sixth Circuit authority which holds that an offender uses force "against the person of another" only when he exerts that force with a specific target in mind or puts a particular individual in fear. Instead, it is sufficient for purposes of Section 4B1.2(a)(1) that the offender intentionally sets into motion, attempts to set into motion, or threatens to set into motion "a series of events that [he] knows will result in the application of a force capable of causing physical pain or injury to another," *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012), where another person exists for that force to be exerted against and under circumstances that the user knows or has reason to know could result in contact with that other person.

9

The foregoing definition finds support in several cases—including at least one Seventh Circuit decision analyzing subsection (a)(2) the statute at issue in the instant case—finding that statutes criminalizing the discharge of a firearm into an occupied vehicle categorically involve the use of violent force against the occupant or occupants of that vehicle. *See, e.g.*, *United States v. Wilkerson*, 492 F. App'x 447, 449 (4th Cir. 2012) (finding that North Carolina conviction for discharge of a firearm involved the use of force against the person of another), *and United States v. Curtis*, 645 F.3d 937, 941–942 (7th Cir. 2011) (finding that Illinois conviction for knowing and intentional discharge of firearm into a vehicle involved the use of force against the person of another). While at least three decisions—*United States v. Ruvalcaba*, 627 F.3d 218 (6th Cir. 2010), *United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005), and *United States v. Alfaro*, 408 F.3d 204 (5th Cir. 2005)—have refused to reach the same conclusion for discharge into buildings, all three of the provisions analyzed in those cases are distinguishable from 720 Illinois Compiled Statute Annotated § 5/24-1.2(a)(1) in that they encompassed buildings that were empty at the time of discharge. *See Ruvalcaba*, 627 F.3d at 222 (explaining that Ohio discharge of a firearm into an occupied dwelling did "not require the use of physical force against another" because "occupied dwelling" included structures that were empty at the time of discharge); *Jaimes-Jaimes*, 406 F.3d at 849–50 (finding that Wisconsin discharge of a firearm into a building involved the use of force against the building, not other persons); *Alfaro*, 408 F.3d at 209 (finding that Virginia discharge of a firearm into a building does not involve the use of force against another person because the offense could be committed by shooting into a building that was not occupied).

Unlike the provisions in *Ruvalcaba*, *Jaimes-Jaimes*, and *Alfaro*, the version of Illinois aggravated discharge of a firearm in effect in 1998 required that the shooter direct the discharged firearm at a person, vehicle which the shooter knows is occupied at the time of discharge, or

10

building that the shooter knows is occupied at the time of discharge. This combination of elements—occupancy in fact and knowledge of the same—made it impossible to commit the offense without the use, attempted to use, or threatened use of violent force against another. *Accord United States v. Womack*, 732 F.3d 745, 748–49 (7th Cir. 2013) (finding Illinois discharge of a firearm into an occupied building involved force against occupant where the offender knew about the occupancy); *Curtis*, 645 F.3d at 941–942 (finding same with regard to Illinois conviction for knowing and intentional discharge of firearm into a vehicle). Further, because the offense categorically demanded "[k]nowing[] or intentional[] discharge [of] a firearm in the direction of another person or in the direction of a vehicle [the shooter] knows to be occupied," *People v. Williams*, 688 N.E.2d 320, 323 (Ill App. 1997) (internal citation omitted), it is irrelevant that that the offender needed only be reckless as to whether or not the bullet will actually enter the building or vehicle or injure the occupant. *Accord People v. James*, 617 N.E.2d 115, 121 (Ill App. 1993) (describing offense as "intentionally firing a weapon, knowing that the weapon was being fired in the direction of someone").

Because at least two prior convictions remain predicate offenses under provisions left unaffected by the *Johnson* decision, Petitioner is not entitled to the requested collateral relief.

## VI.  CERTIFICATE OF APPEALABILITY

Section 2253 permits issuance of a certificate of appealability (COA) where "the applicant has made a substantial showing of the denial of a constitutional right" and requires that any certificate issued "indicate which specific issue or issues satisfy [that standard]." 28 U.S.C. §§ 2253(c)(2), (3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

11

or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see also Cox v. United States*, No. 1:00-cv-176, 2007 WL 1319270, at *1 (E.D. Tenn. May 4, 2007) (denying request for COA).

While review of applicable federal and state law has led this Court to conclude that violations of Illinois Compiled Statute Annotated § 5/24-1.2 (1998) invariably involved the use, attempted use, or threatened use of violent force against the person of another, its discussion of relevant circuit court opinions—the *Ruvalcaba*, *Jaimes-Jaimes*, and *Alfaro* decisions in particular—evidence a diverse set of views on the topic. Because this Court agrees that reasonable minds might disagree over the propriety of its conclusion, it will issue a limited COA.

## VII. CONCLUSION

For the reasons discussed above, the United States's request for a stay [Doc. 198] will be **DENIED** and Petitioner's § 2255 motion [Docs. 190, 193] will be **DENIED** and **DISMISSED WITH PREJUDICE**. Because this Court agrees that reasonable minds might disagree over the propriety of its conclusion, a COA will issue on the limited ground of whether Illinois aggravated discharge of a firearm invariably involved the use of force "against the person of another."

**AN APPROPRIATE ORDER WILL ENTER.**

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE

12

Case 3:11-cr-00069-TWP-CCS Document 205 Filed 01/17/17 Page 12 of 12 PageID #: 1157